*********** *Page 2 
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following which were entered into as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed between the defendant-employer and the plaintiff at all relevant times herein.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On February 21, 2003, former Deputy Commissioner Douglas E. Berger presided over a hearing on this claim. At the beginning of the hearing Deputy Commissioner Berger noted for the record that a representative of the general contractor, D.J. Griffith d/b/a Griffith Construction Company [hereinafter Griffith Construction] had appeared for hearing the day before and that he (Deputy Commissioner Berger) told the representative of Griffith Construction "that he did not have to come today, that it was not mandatory, that the only issue *Page 3 
that would be resolved today (at this hearing) would be the liability of D.W.I.T., Inc. [hereinafter DWIT]." Therefore, Deputy Commissioner Berger did not address the issue of coverage as to the other defendants, who have since been added to this matter.
2. On June 26, 2003, Deputy Commissioner Berger filed an Opinion and Award which found as fact that plaintiff shattered his left heel on September 19, 2002, as a result of a fall while working for DWIT, that as a result of his fall plaintiff had been unable to earn any wages since September 19, 2002, that DWIT employed three or more employees on September 19, 2002, and that DWIT did not have workers' compensation coverage for its employees on September 19, 2002. Accordingly, Deputy Commissioner Berger concluded as a matter of law that plaintiff had an average weekly wage of $230.00, and was entitled to have DWIT pay to him temporary total disability compensation in the amount of $153.34 per week beginning September 19, 2002 and continuing. Deputy Commissioner Berger ordered DWIT to pay future compensation at the rate of $153.34 per week to plaintiff beginning within 15 days of the filing of his Opinion and Award, but held in abeyance the payment for all accrued compensation owed. Deputy Commissioner Berger further reserved any claim for compensation plaintiff had against Griffith Construction and D.J. Griffith. Plaintiff has not received any payments pursuant to the award of Deputy Commissioner Berger since December 5, 2003.
3. DWIT did not appeal from Deputy Commissioner Berger's finding of fact and conclusion of law that it did not have workers' compensation insurance at the time of plaintiff's injury. The Full Commission finds no valid grounds to set aside this finding of fact and conclusion of law. *Page 4 
4. On May 21, 2004, plaintiff filed a Motion to Show Cause due to DWIT's failure to pay weekly temporary total disability compensation in accordance with Deputy Commissioner Berger's June 26, 2003 Opinion and Award.
5. On July 9, 2004, Chief Deputy Commissioner Stephen T. Gheen entered an Order directing DWIT to appear before Deputy Commissioner George T. Glenn, II, to show cause why DWIT should not be held in civil contempt for its willful refusal to comply with Deputy Commissioner Berger's June 26, 2003 Opinion and Award. On July 30, 2004, the parties appeared before Deputy Commissioner Glenn on the Order to Appear and Show Cause.
6. DWIT raised for the first time at the show cause hearing before Deputy Commissioner Glenn that it had workers' compensation insurance on the date of Plaintiff's injury because its insurance policy with Builders' Mutual was not effectively cancelled.
7. DWIT purchased a policy of workers' compensation insurance for the period of May 10, 2001 through May 10, 2002, from Builders Mutual. DWIT chose to pay its monthly premium on the basis of self-reporting its payroll. The policy provided that workers' compensation premiums were due on or before the 20th of each month. DWIT failed to submit its payroll self report and premium payment for April 2002, by the due date. Builders Mutual sends out monthly interim late notices to those policyholders who do not pay their monthly premium on time. A notice was generated to DWIT on May 17, 2002, for the delinquent April 2002 payment, but DWIT still failed to submit its payroll self report or pay its April 2002 premium.
8. Ms. Wanda Prince of Builders Mutual prepared a "Policy Termination/ Cancellation/Reinstatement Notice" informing DWIT of the intent of Builders Mutual to cancel DWIT's workers' compensation policy effective June 23, 2002. The notice shows an issue date *Page 5 
of June 5, 2002, with a cancellation effective date of June 23, 2002. This notice indicated that the reason for termination of insurance coverage was non-payment of premium and the missing payroll report for April 2002. The notice also indicated that to reinstate the policy, all monthly reports, premium payments and audits must be current.
9. On June 6, 2002, Builders Mutual sent the "Policy Termination/Cancellation/ Reinstatement Notice" to DWIT by certified mail. Ms. Prince prepared this certified mailing along with multiple other cancellations to be sent by certified mail through the post office. Builders Mutual also sent the cancellation notice to DWIT's insurance agent at Stanberry Insurance Agency, by first class mail.
10. Emil Milkey, III, and Emil Milkey, IV, were managing owners of DWIT, a limited liability company, now dissolved. DWIT received Builders Mutual's policy termination/cancellation/reinstatement notice when "Emil Milkey" signed the return receipt for the certified mail on June 14, 2002.
11. DWIT did not contact Builders Mutual to discuss or dispute the unpaid premium or the policy cancellation notice. The agent of Stanberry Insurance Agency did not contact Builders Mutual to discuss or dispute DWIT's unpaid premium or the cancellation.
12. On June 27, 2002, DWIT issued a check numbered 1190 for payment of April and May 2002 workers' compensation premiums under policy number 1000023598101, according to the notation on the check from Emil Milkey, IV. These policy premiums related to the policy year expiring May 10, 2002, but not the May 2002 through May 10, 2003 policy year. Builders Mutual received this check on July 2, 2002. Ms. Prince entered a computer note acknowledging receipt of the check. *Page 6 
13. As a result of the receipt of check number 1190, Ms. Prince sent DWIT a letter on July 2, 2002. In that letter, Ms. Prince acknowledged receipt of the premium payment, but advised DWIT that in order to reinstate its policy, Builders Mutual needed $260.00 for the 2002 policy year renewal and a statement of no losses by July 9, 2002. DWIT took no action thereafter to renew its policy with Builders Mutual.
14. DWIT never submitted the $260.00 policy renewal premium or the statement of no losses. DWIT also never contacted Builders Mutual concerning any potential questions concerning cancellation, reinstatement or renewal of the policy.
15. On June 23, 2002, Builders Mutual cancelled DWIT's workers' compensation insurance policy numbered 001000023598102, with a policy period from May 10, 2002 to May 10, 2003. At the time of cancellation, DWIT had not fulfilled the requirements to renew this policy, but apparently Builders Mutual had continued the policy under the same self-report terms as the previous policy year. Under the applicable statutes and the terms of the policy, Builders Mutual was required to give at least 15 days prior written notice of cancellation to DWIT stating the precise reason for cancellation, by registered or certified mail, return receipt requested, to the last known address and the cancellation is not effective unless or until this method of providing notice is "employed and completed." The reason for the 15-day notice requirement is to allow the insured (here DWIT) to go out and replace the coverage before it is cancelled so that his employees would not be without coverage. Mr. Emil Milkey received and signed for the certified mail on June 14, 2002. Since defendants mailed the notice on June 6, 2002, and the notice had an effective cancellation/ termination date of June 23, 2003, the written notice of cancellation was issued 17 days before cancellation became effective. According to the DWIT workers' compensation policy, cancellation for non-payment of premium is not effective if the amount due *Page 7 
is paid before the effective date stated in the notice of the cancellation, which DWIT did not do. Assuming arguendo that the cancellation was not effective, DWIT still failed to fulfill the requirements to renew his policy for the May 2002 to May 2003 policy year.
16. Builders Mutual's cancellation notice sent by certified mail provided DWIT with sufficient notice as required by statute. Builders Mutual was willing to renew DWIT's policy, but DWIT failed to perform the requirements necessary to renew its policy for the May 2002 through May 2003 year. Since DWIT failed to renew its policy, it had no workers' compensation coverage at the time of plaintiff's injury on September 19, 2002, which was 98 days after DWIT had actual notice of cancellation and 80 days after DWIT was sent notice of what was needed to renew the policy.
17. DWIT paid premium based upon its self-reporting of payroll. Builders Mutual reserved the right to perform a physical audit on each insured who self reports the payroll to determine if there is an overpayment or underpayment of premium at the end of each policy year. This mechanism allows Builders Mutual to accurately determine the amount of premium payable each policy year.
18. An audit request was generated for DWIT's policy year of May 10, 2001 through May 10, 2002. Builders Mutual performed an on-site audit of DWIT's payroll on July 18, 2002. The audit showed that DWIT underpaid $5,776.25, in premiums for the policy year May 10, 2001 through May 10, 2002.
19. DWIT, on its application for coverage, listed payroll of $28,100.00 for each manager. Emil Milkey completed this application.
20. On July 19, 2002 Builders Mutual sent a bill for $5,776.25, to DWIT for the balance of the premium due for the policy year May 10, 2001 through May 10, 2002. DWIT *Page 8 
never contacted Builders Mutual to dispute the audit findings. DWIT also failed to pay the $5,776.25 underpayment of premium for the policy year ending May 10, 2002.
21. A second audit for the policy period from May 10, 2002 to June 23, 2002 occurred on July 30, 2002. Builders Mutual's procedure provides that if less than four months have passed in a policy year, it performs an in-house audit rather than an on-site audit. Builders Mutual based the audit for the May 10, 2002 through June 23, 2002 period upon the minimum owner-manager's wage of $28,100.00, prorated over the actual number of days that the policy remained in effect according to the cancellation notice. Builders Mutual determined that the payroll for this period equaled $6,913.00, with a premium of $915.00 due. As a result of the audit, Builders Mutual sent a bill to DWIT for $915.00 for the premium owed from May 10, 2002 through June 23, 2002. DWIT did not pay the $915.00, owed.
22. As a result of DWIT's failure to pay audited premiums, Builders Mutual filed a civil action seeking payment for premiums due for the period covered by the policy. A default judgment was entered on December 22, 2003 in Wake County District Court against Emil Milkey, III and Emil Milkey, IV, individually and d/b/a DWIT for the $6,791.25 owed to Builders Mutual, plus interest.
23. On September 13, 2002, Griffith Construction, a general contractor, by and through D.J. Griffith, entered into a subcontract with DWIT for the framing of a house. At the time of the contract, Emil Milkey, the owner of DWIT, did not furnish D.J. Griffith a current certificate of workers' compensation insurance. D.J. Griffith knew DWIT did not have workers' compensation insurance. D.J. Griffith contends that he advised Mr. Milkey not to begin work until he had workers' compensation insurance in effect; however, the Full Commission does not find D.J. Griffith's statements on this issue to be credible. It is undisputed that DWIT began *Page 9 
work under the contract without providing D.J. Griffith a valid certificate of workers' compensation insurance.
24. On September 19, 2002, while working for DWIT performing subcontract work for Griffith Construction, plaintiff fell on the job site and shattered his left heel. Neither Griffith Construction nor DWIT had workers' compensation insurance coverage at the time of plaintiff's injury. DWIT did not file a Form 19 for plaintiff's injury with Builders Mutual and never verbally reported plaintiff's accident to Builders Mutual, as Mr. Milkey was aware he had not renewed his insurance policy with Builders Mutual. As a result of his injury by accident arising out of and in the course of his employment, plaintiff was temporarily totally disabled from September 19, 2002 through the date of the hearing before the Deputy Commissioner and continuing.
25. DWIT did not possess workers' compensation insurance for its employees on September 19, 2002, the date of plaintiff's injury. Additionally, D.J. Griffith did not obtain a copy of a valid certificate of workers' compensation insurance prior to allowing DWIT to begin work. Plaintiff was therefore a statutory employee of Griffith Construction and would have been covered under Griffith Construction workers' compensation policy, if Griffith Construction had workers' compensation insurance.
26. Plaintiff continues to be disabled as a direct result of his compensable injury by accident but is not receiving either disability benefits or medical benefits for which he is entitled under the North Carolina Workers' Compensation Act.
27. DWIT is the defendant that is primarily responsible for the payment of workers' compensation benefits to plaintiff in this matter and Griffith Construction is secondarily liable.
 *********** *Page 10 
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Builders Mutual properly cancelled DWIT's workers' compensation policy on June 23, 2002. Also, DWIT failed to renew its policy for May 2002 through May 2003. DWIT paid no premium for the May 2002 through May 2003 policy year and failed to submit a statement of no losses as required by his policy terms. N.C. Gen. Stat. §§ 58-36-105; 58-36-110.
2. On September 19, 2002, plaintiff suffered a compensable injury by accident arising out of and in the course of his employment with DWIT. At the time of his compensable injury, plaintiff was a statutory employee of Griffith Construction, the general contractor. D.J. Griffith did not obtain a valid certificate of workers' compensation insurance from DWIT prior to allowing DWIT to start work as a subcontractor for Griffith Construction. D.J. Griffith did not have workers' compensation coverage for Griffith Construction at the time of plaintiff's injury.
3. Plaintiff is entitled to have the defendant DWIT and Griffith Construction pay for all medical treatment that is related to his injury by accident for so long as such treatment may reasonably be required to effect a cure, give relief and will tend to lessen plaintiff's disability.
4. As a result of his injury, plaintiff is entitled to temporary total disability at the rate of $153.34 per week from September 19, 2002, and continuing until he returns to work or until further order of the Commission.
5. DWIT is primarily liable and Griffith Construction is secondarily liable to plaintiff for medical and indemnity compensation awarded herein.
 *********** *Page 11 
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant DWIT and Griffith Construction shall pay plaintiff temporary total disability at the rate of $153.34 per week from September 15, 2002 and continuing until plaintiff has returned to work earning the same or greater wages as he was earning as of the date of his compensable injury by accident, or until further order of the Commission.
2. Defendant DWIT and Griffith Construction shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury when bills for same have been submitted and approved according to procedures adopted by the Industrial Commission, for so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation awarded plaintiff herein is approved for plaintiff's counsel, and shall be paid directly to plaintiff's counsel. All attorney's fees due on accrued compensation shall be paid in one lump sum. Thereafter, plaintiff's counsel shall received twenty-five percent (25%) of all future compensation due plaintiff.
4. Defendants shall pay the costs of this action.
 ORDER
Plaintiff's Motion to Show Cause against DWIT is held in abeyance and shall be determined at the penalty hearing in this case. This case is referred to the Deputy Commissioner's section for a hearing to determine penalties owed by DWIT and Griffith Construction for failure to carry workers' compensation insurance and against Emil Milkey, III, Emil Milkey, IV, and D.J. Griffith individually pursuant to N.C. Gen. Stat. § 97-94 (d) for failure to bring their businesses in compliance with the Act.
This the ___ day of June 2007.
 S/_______________
 BERNADINE S. BALLANCE
 COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/______________ DIANNE C. SELLERS COMMISSIONER *Page 1